SEDGER v KINNCO, INC

Docket No. 98810. Submitted June 22, 1988, at Grand Rapids. Decided December 21, 1988. Leave to appeal applied for.

Katana Resources, Ltd., contacted Kinnco, Inc., in an attempt to locate eighteen drill collars for an oil-drilling project in Liberia. Kinnco located eighteen collars with the help of Magnum Power Tongs, Inc. Katana and Kinnco agreed on the price of the collars and apparently it was agreed that the collars would be stored at Magnum Power Tongs until Katana picked them up for export to Liberia. Payment was made by Katana to Kinnco and by Kinnco to Magnum in December, 1981. Katana did nothing further regarding the collars until April, 1983, when Katana advised Kinnco that the collars could not be located. Magnum Power Tongs had gone out of business and the person involved in the transaction had disappeared. J. Harvey Sedger, as assignee of Katana Resources, Ltd., filed suit against Kinnco, Inc., in Grand Traverse Circuit Court alleging a breach of contract. The court, Charles M. Forster, J., found that Kinnco had performed all the terms and conditions of the original agreement, that the sale contemplated a relatively short period for pickup by Katana, that time was of the essence in the contract, that the risk of loss had passed to Katana, that Kinnco had been prejudiced by Katana's dilatory conduct, and that Katana's claim was barred pursuant to the equitable doctrine of laches. A judgment of no cause of action was entered. Sedger appealed.

The Court of Appeals *held:*

Although the trial court was mistaken in its risk-of-loss analysis, it did not clearly err in finding that Katana's dilatory conduct had prejudiced Kinnco. The holding that Katana's claim was barred by the equitable doctrine of laches is affirmed.

Affirmed.

1. Equity — Laches.

The application of the doctrine of laches requires a passage of

References

Am Jur 2d, Appeal and Error §§ 839 *et seq.*; Equity §§ 152 *et seq.*
See the Index to Annotations under Appeal and Error; Laches and Delay.

time combined with a change in condition which would make it inequitable to enforce the claim against the defendant.

2. Appeal — Bench Trial — Findings of Fact.

Findings of fact made by a trial court sitting without a jury will not be set aside by an appellate court unless clearly erroneous.

*Elhart, Bishop & Thomas, P.C.* (by *Craig W. Elhart*), for plaintiff.

*Murchie, Calcutt & Boynton* (by *Harry Calcutt* and *Mark A. Burnheimer*), for defendant.

Before: MacKenzie, P.J., and Beasley and M. G. Harrison,* JJ.

Per Curiam. Plaintiff, J. Harvey Sedger, as assignee of Katana Resources, Ltd., appeals as of right from a lower court verdict of no cause of action with regard to his claim of breach of contract against defendant, Kinnco, Inc. We affirm.

In October of 1981, Katana was attempting to outfit an oil drilling project in Liberia. On October 28, Mr. Sedger of Katana contacted defendant in an attempt to locate eighteen drill collars for the project. At the time, the collars were in short supply and were needed immediately by Katana. Mr. Kinney, president of defendant Kinnco, Inc., said that they were no longer in the business of selling drill collars but that a mutual acquaintance, Mr. McMinn, president of Magnum Power Tongs, Inc., was present in defendant's office and might be able to help. Mr. McMinn talked to Mr. Sedger. Later that day, through the efforts of McMinn, Kinney was able to locate the eighteen drill collars. Kinney immediately telephoned Mr. Sedger and advised him that he had been successful. During this conversation, agreement was

* Circuit judge, sitting on the Court of Appeals by assignment.

reached on the price. Although there was conflict-
ing testimony on the point, the trial court found
that Mr. Sedger agreed that the drill collars would
be stored at Magnum Power Tongs in Houston,
Texas, and that Katana would pick them up for
export to Liberia.

On October 29, 1981, defendant invoiced eigh-
teen drill collars to Katana for $71,172. On No-
vember 3, 1981, Magnum Power Tongs, Inc., in-
voiced defendant $63,072 for the collars. On De-
cember 4, 1981, defendant received payment from
Katana and on the following day defendant paid
the Magnum Power Tongs invoice.

According to the findings of the trial court,
Katana did nothing further regarding the collars
until April, 1983. In the interim, Katana's United
States subsidiary had filed for reorganization in
bankruptcy, but the schedules were silent regard-
ing the collars. On April 29, 1983, Katana Re-
sources, Ltd., the parent company, advised defen-
dant that the drill collars could not be located.
Apparently Magnum Power Tongs was no longer
in business and Mr. McMinn had disappeared
outside the country.

The trial court found that defendant had per-
formed all the terms and conditions of the original
agreement, that the sale contemplated a relatively
short period for pickup by Katana, and that time
was of the essence in the contract. Further it held
that the risk of loss had passed to Katana. Finally,
it found that defendant had been prejudiced by
Katana's dilatory conduct and it held that Kata-
na's claim was barred pursuant to the equitable
doctrine of laches. A judgment of no cause of
action therefore was entered.

Katana's assignee, Mr. Sedger, appeals, raising
two issues. First, appellant argues that the trial
court incorrectly applied the law controlling risk

of loss. Appellant argues that the special sections of the law for bailees should have been applied. Second, appellant argues that his claim should not be barred by laches. For reasons different from those raised by appellant, we agree that the trial court was mistaken in its risk-of-loss analysis. However, the trial court did not clearly err in finding that Katana's dilatory conduct had prejudiced defendant. Therefore we affirm the trial court's holding that Katana's claim was barred by the equitable doctrine of laches.

The trial court's risk-of-loss analysis is incorrect in that it interpreted MCL 440.2510(3); MSA 19.2510(3) to shift the risk of loss permanently to Katana. The section in question provides:

> (3) Where the buyer as to conforming goods already identified to the contract for sale repudiates or is otherwise in breach before the risk of their loss has passed to him, the seller may to the extent of any deficiency in his effective insurance coverage treat the risk of loss as resting on the buyer *for a commercially reasonable time.* [MCL 440.2510(3); MSA 19.2510(3), emphasis added.]

The emphasized phrase indicates that the risk would have been effectively shifted to the buyer, Katana, only for a commercially reasonable period of time. After that time, the seller again would have been responsible.

Since the trial court based its conclusion upon MCL 440.2510(3); MSA 19.2510(3), it was unnecessary for the court to make findings which would otherwise be essential for a complete risk-of-loss analysis. In particular, the trial court did not explicitly make findings either regarding defendant's status as a merchant or nonmerchant, MCL 440.2104(1); MSA 19.2104(1), or concerning whether Mr. McMinn or Magnum Power Tongs,

Inc., was acting as Katana's agent for purposes of determining receipt of the goods, MCL 440. 2509(3); MSA 2509(3). Moreover, the underlying reasons for application of this section of the code were not adequately identified.

The trial court's holding on the second issue removes the necessity for considering a remand for further findings of fact. It is to that issue that we now turn.

The application of the doctrine of laches requires a passage of time combined with a change in condition which would make it inequitable to enforce the claim against the defendant. *Lothian v Detroit,* 414 Mich 160, 168-169; 324 NW2d 9 (1982). In determining whether a party is guilty of laches, each case must be determined on its own particular facts. *Edgewood Park Ass'n v Pernar,* 350 Mich 204, 209; 86 NW2d 269 (1957).

The opinion of the trial court stated:

> The Court further finds that Kinnco was prejudiced by Katana's negligent delay, and is not responsible for Katana's dilatory conduct pursuant to the equitable doctrine of laches.

A review of the record discloses that a finding of prejudice to Kinnco is not clearly erroneous and thus will not be set aside. *Keller v Paulos Land Co,* 5 Mich App 246, 254; 146 NW2d 93 (1966), aff'd 381 Mich 355; 161 NW2d 569 (1968).

Affirmed.